Ruth Ann MANNING, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13217.

Court of Criminal Appeals of Oklahoma.

Sept. 12, 1962.

Robert W. Hoyland, Guthrie, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

NIX, Presiding Judge.

The plaintiff in error, Ruth Ann Manning, hereinafter referred to as the defendant, was charged by Information with the crime of Bogus Check in the County Court of Logan County on December 11, 1961. She appeared without counsel and plead guilty. Upon recommendation of the County Attorney, the Court sentenced the defendant to 30 days in jail. After being sentenced the defendant employed counsel who filed a Motion to Withdraw the Plea of Guilty on December 12, 1961, setting out six grounds. This motion was overruled and it is from the action of the trial court that this appeal was perfected.

Defendant lodged her appeal with this Court within the time prescribed by law, asserting the following contentions of error:

1. That the County Court erred in overruling the Motion to Withdraw Plea of Guilty.

2. That the County Court erred in overruling the Motion for New Trial.

3. That the County Court erred in overruling the Motion to Arrest the Judgment.

4. That the judgment imposed by the County Court on the recommendation of the County Attorney is excessive, unconscionable and indicated prejudice on the part of the County Attorney.

5. That the judgment of the Court and the findings of fact embodied therein are not sustained by the evidence and are contrary to the evidence.

It is the first contention of error that we will discuss and it will be necessary to briefly outline the facts as they appear in the record, to present the issue to be determined.

The record relates that the defendant gave a $10.00 bogus check to the Weathers Champlain Station on November 9, 1961. Mr. Weathers placed the check in the hands of the County Attorney and signed a complaint "in blank" on December 1, 1961. The County Attorney advised Mr. Weathers he would write the defendant about the matter. He did so, on December 1, 1961, in which he advised her:

"Mr. Roy Weathers of Champlain Service Station of this city, was in my office and informed me that on November 9, 1961, you gave him a "hot check" for the amount of $10.00. *I advised him not to sign a complaint today,* but to wait until I could write and hear from you and thereby give you an opportunity to make some explanation. *If I do not hear from you by December 11, 1961, charges will be filed."*

On Sunday, December 10, 1961, the mother of the defendant paid Mr. Weathers the $10.00 to cover the check. He agreed to call the County Attorney the next morning and advise him the check had been paid, and not to file the complaint. Before he could call the County Attorney's Office however, his secretary called Mr. Weathers to see if the check had been paid and he advised her that it had and asked if the County Attorney intended to prosecute, and was advised that he did.

In the meantime, on Saturday, December 9, 1961, the defendant was arrested by the Guthrie Police with two other girls on suspicion of shoplifting. All three girls were placed in the City Jail and later removed to the County Jail. The following Monday morning December 11, 1961, the three girls were escorted to the office of the County Judge for arraignment, and at that time, the defendant was served with an arrest warrant on the Bogus Check charge, which the County Attorney had just filed. The mother of the defendant had talked to Lt. Dale Orndorff of the Guthrie Police Department who had investigated the shoplifting charge, and was advised that it looked as though the defendant was not involved in that matter.

His testimony on this conversation is as follows:

"Q. Do you remember the conversation which she testified to that she had talked to you, well do you remember it?

"A. Yes, sir, I remember it.

"Q. What time did this conversation occur?

"A. It was on a Monday morning, I was eating breakfast when she called.

"Q. Can you relate the conversation as near as possible?

"A. Yes, she called about the shoplifting charge, we talked about that and I told her the way the evidence stood at that time that it looked possibly like Ruth wasn't involved, if Ruth and the two girls were telling the truth, I did inform her however that I didn't know what the lady that runs the store would say, that if she said they were in the store when the stuff was taken she was an accessory or an accomplice and probably would be charged, if she was in the store, but the way the evidence stood at that time, if she was out of the store as the girl stated she was, that I had talked to the County Attorney on Sunday and advised him of that and he said of course if she wasn't in the store and had nothing to do with it naturally we didn't have a case. Then she mentioned a check, however I didn't know anything about this letter, didn't know there had been any conversation between the County Attorney, Ruth Ann or anything, didn't even know who had the check. She said Ruth had a check out for Ten Dollars and either said "I have paid it or am going to pay it" and she asked me what I thought about that. I said I supposed whoever has the check, he's a business man like everybody else, what he wants is his money. I presumed that this check was just a check that she had out, she went down and paid it off, it had never come to the attention of the County Attorney, or nobody else, naturally I thought the way she explained it to me, if the check was paid off that was it, that was my personal opinion, I didn't quote the County Attorney or the Judge or nobody else, not the Sheriff.

"Q. Did she at that time Dale, mention to you or ask your advice as to whether or not she ought to get a lawyer?

"A. On the shoes, that was on the shoes, and I told her until charges were filed that I didn't think that she needed a lawyer, and I further told her that I didn't think charges would be filed if everybody was telling the truth, I did tell her that I didn't make the arrest. I believe Laura will recall me telling her that Hoppy and Officer Leazer made the arrest and I hadn't been to the store and hadn't talked to the women, didn't know what their reaction would be, but on the surface it would appear that possibly she wasn't guilty."

The mother of the defendant further stated she was advised by Nolen Welch, Sheriff of Logan County that she need not employ an attorney to represent the defendant and that the prosecuting witness, Roy Weathers, did not want to prosecute the Bogus Check charge, that the court would probably lecture the defendant and there would be no punishment whatsoever.

One of the girls entered a plea of guilty to the shoplifting charge, completely exonerating the defendant and the other girl. Since the mother of the defendant advised the girl before coming to court that all she would receive would be a lecture from the court she was still under this assumption when the trial judge advised her of her constitutional rights, her right to counsel, etc., which she waived. Instead of the lecture, she was sentenced to 30 days in jail and costs, on recommendation of the County Attorney.

After she was sentenced, she employed counsel, who filed the Motion to Withdraw Plea of Guilty the following day. The

Court overruled this Motion on December 15, 1961.

 It is true that the granting or denying of permission to withdraw a plea of guilty either before or after judgment, and substituting a plea of not guilty is a matter within the sound discretion of the trial court. However, the Court of Criminal Appeals has held consistently that a defendant in a criminal case should be permitted to withdraw his plea of guilty given unadvisedly before or after judgment, where any reasonable ground is offered in support of his motion.

In the case of Sloan v. State, 54 Okl.Cr. 324, 20 P.2d 917, this Court held where it reasonably appears a plea of guilty was influenced by persons in apparent authority which has led a defendant to believe that by entering a plea of guilty, his punishment would be mitigated, he should be permitted to withdraw his plea of guilty and enter a plea of not guilty.

It is this writers belief that the defendant entered her plea of guilty as the result of misapprehension, and an unseemly haste on the part of the County Attorney, as the Bogus Check charge would not have been filed had the County Attorney complied with his letter written to defendant, wherein he stated:

"If I do not hear from you by December 11, 1961, charges will be filed."

Also, the complaining witness would not have signed a complaint on December 11, 1961, as he had been re-imbursed, and did not want to press charges.

This Court held in Cannon v. State, Okl. Cr., 296 P.2d 202:

"Where it appears from the whole record, the pleadings minutes, and evidence at hearing on application to withdraw plea of guilty and stand trial that such plea may have been entered as result of inadvertence, ignorance, misunderstanding, misapprehension, or without deliberation, and it is apparent that application to withdraw plea is made in good faith and not for the pur-

pose of delay or to defeat the ends of justice, denial of application to withdraw plea of guilty will constitute abuse of discretion."

In view of the fact that it is readily apparent from the testimony of the defendant that she is not familiar with Court room proceedings, or legal terminology, and due to the rapidity of the proceedings, the absence of legal counsel and her impression as to what the punishment would be, in the opinion of this Court, constitutes reasonable grounds to permit defendant to withdraw plea of guilty.

For the foregoing reasons, along with the fact that the Attorney General orally confessed error and filed no brief, we feel the administration of justice would be better served by vacation of the judgment and sentence, withdrawal of the plea of guilty, permitting the defendant to enter plea of not guilty, and stand trial on the charge herein alleged, and it is so ordered. Reversed with instructions.

BRETT and BUSSEY, JJ., concur.