Mike **CARTER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–73–284.

Court of Criminal Appeals of Oklahoma.

April 8, 1974.

Rehearing Denied April 24, 1974.

Ed. Dudley and Pat Phelps, Durant, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Mike Carter, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Bryan County, Oklahoma, for the offense of Unlawful Delivery of Controlled Drug in Case No. CRF–72–121. His punishment was fixed at a term of three (3) years imprisonment in the state penitentiary. From said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the evidence adduced at trial reveals that the State's first witness, William A. Lilley, a detective with the Durant Police Department, testified that on the evening of September 15, 1972, he, Ed Loffi, and Cary Thurman left the City of Durant and proceeded to Pappy's Play Pen near Colbert, Oklahoma, in Bryan County. He and Loffi remained in their car while Thurman and a man called Tom went inside. They remained parked there from approximately 10:45 p. m. to shortly after midnight on the 16th. When they saw Thurman leave Pappy's, they drove to a predetermined location where Thurman gave them some pink tablets which the witness identified as being State's Exhibit No. 1. Lilley also stated that Tom was a youth who assisted the officers on the evening in question and that he was procured through the Grayson County, Texas, sheriff's office.

Edward Loffi, an agent with the Oklahoma State Bureau of Investigation, testified that on September 15, 1972, he was working with the Narcotics Division. During the evening he and Lilley in one car and Cary Thurman in another vehicle proceeded to Pappy's Play Pen. Thurman entered Pappy's at approximately 11:00 p. m. with another individual. When Thurman exited at approximately 1:00 a. m., the witness followed him to the prearranged location and Thurman gave him some pink pills. Loffi identified State's Exhibit No. 1 as a plastic bag containing said pills and related that he transported the same to the Crime Bureau Laboratory in Oklahoma City. The witness also testified that they were assisted by a youth named Tom because he knew the club and the vicinity and was known by its patrons.

Cary Thurman testified that on the date in question he was working as an undercover narcotics agent and that he and a man named Tom went into Pappy's Play Pen at approximately 11:00 p. m. Thurman sat at a table while Tom talked to the defendant for approximately fifteen minutes. Tom and the defendant came to the table and Thurman was advised by Tom that the defendant had five hundred (500)

"barbs" he wanted to sell. The defendant wanted $100.00 for the entire lot, but Thurman stated he only wanted two hundred fifty (250) pills. The defendant said, "Okay, but I'm going to have to leave and go pick it up." The defendant then left and returned to the club approximately thirty or forty-five minutes later. Thurman stated that the trio then proceeded into the men's room wherein the defendant handed Tom the bag full of pink pills and Tom handed the same to Thurman. Thurman then gave the defendant $60.00 and the defendant gave him $10.00 change. He identified State's Exhibit No. 1 as being the bag of pills he purchased from the defendant and stated that he turned the bag over to agent Loffi in a field a short distance away from Pappy's.

John McAuliff, Chief Chemist with the Oklahoma State Bureau of Investigation, identified State's Exhibit No. 1 and the pink tablets therein as having been delivered to him for analysis by Loffi on September 18th, and that he analyzed the same. He related that one tablet was taken at random, analyzed and found it contained a barbituric acid derivative, a central nervous system depressant and a controlled dangerous substance.

After the State rested, the defendant testified in his own behalf. He stated that he was a resident of Denison, Texas, and denied selling anything to Cary Thurman on September 15, 1972, at Pappy's Play Pen, denied handing a package of pills to a person named Tom, denied being present at Pappy's on the 15th, and denied having anything to do with drugs. The defendant was subsequently recalled to the stand, and related that he was in fact at Pappy's on the evening in question, but not when the transaction was alleged to have taken place.

The defendant then offered two character witnesses who testified that defendant had a good reputation in his community.

Defendant's first proposition in error urges that the trial court erred in not granting a mistrial because of a statement made by a prospective juror during voir dire examination. The complained of comment arose as follows:

"BY THE COURT: Well, let me ask you this, then. Is there any reason known to you and unknown to those of us here why you would be unable to sit as a fair and impartial juror in this case?

"BY BOBBIE ALLMAN: Well, I believe if a man's picked up and goes as far as trial, he's guilty.

"BY THE COURT: You may be excused."

■ The defendant argues that the statement made by Juror Allman was prejudicial and the trial court should have admonished the remainder of the prospective jurors to disregard the statement. However, the record reflects no request by the defendant for an admonishment. In McCormick v. State, Okl.Cr., 464 P.2d 942, this Court held as follows:

"It is noted that no evidence of any kind or at any time was offered in support of the defendant's claim that this statement of the prospective juror was prejudicial to his right. It is fundamental that in passing on a Motion for Mistrial the finding of the trial court will not be disturbed in the absence of evidence that it abused its discretion. The defendant has the burden of proof to sustain any challenge of the jury panel and should make a proper showing by introducing evidence to sustain the challenge. Rooks v. State, Okl.Cr., 417 P.2d 939 (1966). Accordingly, we find this assignment of error to be without merit."

In the instant case there is no showing of any prejudice to support the defendant's claim, and defendant's first proposition is without merit.

■ The defendant next contends that the trial court erred in refusing to grant defendant's motion for mistrial due to certain attempts by the prosecuting attorney to show a change in defendant's appearance from the night of the incident. The

first complained of comment arises during the cross-examination of the defendant as follows:

"Q: And, Mr. Carter, how were you wearing your hair at the time this alleged transaction took place?

"BY MR. DUDLEY: Just a minute, your Honor, we object to that as being incompetent, irrelevant, and immaterial. Has no bearing on this case.

"BY MR. TUDOR: I think identification, you Honor, is very relevant.

"BY MR. DUDLEY: He's already identified—

"BY THE COURT: (Interrupting) As to his own appearance?

"BY MR. TUDOR: Yes, sir.

"BY THE COURT: I'll sustain the objection. Exception allowed."

The next complained of comment arose during the direct examination of Cary Thurman on rebuttal as follows:

"Q: Very well. Will you tell this jury, please, what was different about his appearance that particular evening?

"BY MR. DUDLEY: Object to that as being incompetent, irrelevant and immaterial. The Court has previously sustained objection to that question, and we now move for a mistrial.

"BY THE COURT: Your motion for mistrial will be overruled, exception allowed. Your objection will be sustained."

In both instances it will be noted that objections were made and sustained before any question could be answered. The answer was never received by the jury and we cannot see where the defendant was prejudiced. See Pierce v. State, Okl.Cr., 383 P.2d 699. As the defendant has submitted no proof of prejudice, his second proposition in error is without merit.

The defendant next urges that the trial court erred in overruling his demurrer to the evidence as the record reflects that any delivery or distribution was made to one "Tom" and not to Cary Thurman as alleged in the Information. The defendant argues that the accusation made by the Information varied from the proof presented at trial and that said variance was fatal. However, said record shows that the defendant handed a bag of pills to Tom who immediately handed them to Thurman and that the defendant and Thurman consummated the financial arrangements. Tom was only a conduit through which the distribution of drugs was made.

■ There is nothing in the Information as filed which could have substantially misled the defendant in the preparation of his defense, and he cannot be prosecuted again for the single transaction. In Mitchell v. State, Okl.Cr., 408 P.2d 566, this Court held that a variance is not material or fatal unless it is such that might mislead the defendant or expose him to being twice put in jeopardy for the same offense. See also Flores v. United States, 10 Cir., 338 F.2d 966, wherein it was held that an indictment was sufficient even though it did not name the transferee in a transaction constituting a narcotics violation. Therefore, it is our opinion that defendant's third proposition is without merit.

The defendant's fourth proposition in error urges that the trial court erred in refusing to grant the defendant a one day continuance or, in lieu thereof, to admit into evidence a sworn statement of an absent witness. The record reflects that on the 19th day of March, 1973, defense counsel filed a motion for continuance in the trial court stating that their investigation had revealed that the full name of the mysterious witness "Tom" was Tom Morrison and that he was presently a patient in the State Mental Hospital in Wichita Falls, Texas. The motion for continuance was granted and the trial was reset for the 21st day of May, 1973. On the day of trial defense counsel again requested a continuance until 9:00 a. m. the next morning for the following reasons: that Tom Morrison had promised to be in court to testify on behalf of the defendant; that he had given a sworn statement, which testimony, if be-

lieved by the jury would exonerate the defendant; and that the witness had been in the office of a Justice of the Peace in Denison, Texas, on the morning of trial but had left and his whereabouts were again unknown. Defense counsel further stated that if a continuance was granted he believed he could have Tom Morrison present to testify the next morning. In lieu of the continuance defense counsel then asked that the sworn statement of the witness be admitted into evidence as defendant's Exhibit 1. The trial court overruled the motion for continuance and further overruled the motion to have the sworn statement read into evidence.

■■ In support of his contention the defendant argues that the right of the defendant to present a witness in his own defense was prejudiced by the trial court not granting the continuance or admitting the sworn statement into evidence. However, the record shows that the defendant at no time attempted to subpoena to compel the attendance of his material witness. This Court has held on many occasions that the defense must show due diligence in its effort to obtain the testimony of material witnesses before a continuance is warranted. See Colvard v. State, Okl.Cr., 453 P. 2d 715, and Dawes v. State, 34 Okl.Cr. 225, 246 P. 482. The sworn statement was properly excluded by the trial court as it comes within no exception to the hearsay rule. Therefore, for the reasons set out above the trial court did not abuse its discretion in ruling on the admissibility of said statement and denying the requested continuance.

■ The defendant next contends that the trial court erred in failing to grant a mistrial after the prosecuting attorney made an alleged improper statement during the closing argument. However, in Neal v. State, Okl.Cr., 506 P.2d 936, this Court recently held that if an improper statement is made by the prosecution it should be called to the attention of the trial court by timely objection and a request made that the jury be admonished to disregard same. In the instant case no admonishment was requested and any objection is, therefore waived.

The defendant's last proposition urges that the trial court committed reversible error in submitting an instruction to the jury on the law of entrapment since the defendant's defense amounted to a denial. We do not agree. The record of the instant case shows that after the State and the defendant had both rested, defense counsel moved the trial court to suppress all evidence on behalf of the State "for the reason that the same was obtained by entrapment through the actions of Agent Loffi, Undercover Agent Thurman, or someone acting by, through, and under their authority." The complained of instruction was thereafter submitted to the jury without objection, the defendant raising the issue for the first time after the jury had retired to deliberate.

■ If defense counsel desired no instruction on the law of entrapment, he should have so informed the trial court by proper objection prior to the submission of the instructions to the jury. See Skinner v. State, Okl.Cr., 439 P.2d 962 and Kidd v. State, Okl.Cr., 462 P.2d 281. The entrapment instruction was consistent with the evidence presented at trial and the trial court committed no error in submitting same. Therefore, defendant's last contention is without merit.

From a consideration of the record as a whole, we find that the defendant has been deprived of no substantial right, that the issues were fairly presented to the jury, and defendant received a fair and impartial trial. The verdict and judgment appealed from is, accordingly, affirmed.

BRETT, J., concurs in results.

BUSSEY, J., concurs.