**Myra Lee COLLINS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. PC–73–295.**

Court of Criminal Appeals of Oklahoma.

April 10, 1974.

Philip F. Horning, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., M. Joe Crosthwait, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Myra Lee Collins, hereinafter referred to as defendant, was charged in the District Court, Custer County, Case No. CRF–73–15, with the crime of Unlawful Delivery of a Controlled Dangerous Substance, in violation of 63 O.S.1971, § 2–401. She entered a plea of guilty thereto, and now perfects her appeal from the District Court's denial of Post-Conviction Relief.

At the preliminary hearing, Deputy Sheriff Wade Langley testified that he went to the defendant's residence in Weatherford, Oklahoma, for a meeting with the defendant, which had been arranged by a confidential informant. Defendant indicated that she could supply the undercover officer with some LSD. The officer dealt with the defendant, asking her to supply him. After some further conversation, defendant and Langley drove to a trailer park and defendant entered trailer # 5 while Langley remained in the car. Langley had given the defendant $50.00 in marked bills with which to purchase fifty (50) tablets of LSD. Within a few minutes, defendant emerged from the trailer in the company of a man and the two entered a Ford Torino parked near Langley's car. Approximately five minutes later, the two got out of the Ford, the man carrying a cellophane baggie. From there the two returned to the trailer, remaining there momentarily, and defendant returned to Langley's car and gave him a baggie containing fifty (50) tablets of LSD and $10.00 in change. Langley testified he dealt with defendant at all times during this transaction.

Defendant makes two assignments of error. She asserts first that she was not guilty of the crime of Unlawful Delivery of LSD, but was rather "a valid purchasing agent" for the undercover agent and, consequently, guilty only of the offense of Possession. She contends her plea was, therefore, unknowledgeable and inadvertent.

Secondly, defendant asserts that the provisions of the Post-Conviction Procedure Act, 22 O.S.1971, § 1080 et seq., are sufficiently broad to allow the Court to consider fundamental issues not previously presented, regardless of the guilty plea.

Defendant relies on the recent decision of Posey v. State, Okl.Cr., 507 P.2d 576 (1973), to sustain her first assignment of error. In that case the defendant, Posey, was approached by an undercover officer who offered to buy marihuana from the defendant, and we stated:

"Defendant advised the officer that he didn't have any marihuana, but that he could take him to someone who might sell him some. Defendant got into the officer's automobile and they drove to Nineteenth and Francis Street, where defendant left the car for a few minutes and returned with co-defendant Mayes. . . . Defendant . . . got out of the car to go and buy the marihuana for the officer. The officer gave a twenty dollar bill to Mayes and instructed them if they could not buy hashish for fifteen dollars, then they should 'call off the whole thing.' The two men entered a nearby residence and were gone for five or ten minutes when they returned to the officer's car. Defendant handed the officer an aluminum foil wrapper. Mayes handed the officer a five dollar bill, and they told the officer they had gotten the price down to fifteen dollars. The officer put the packet and the money in his pocket and returned defendant and Mayes to the respective points at which they were picked up."

■ In *Posey*, supra, the officer instructed the defendant to buy hashish and

intended throughout the transaction that a third party seller would be contacted. The officer dealt with the seller through an agent, the defendant. In the case at bar, the officer intended to deal with the defendant. The fact that she later dealt with a third party does not place her in the role of an agent. She had not agreed to be an agent, but rather stated that she could supply the undercover officer with LSD.

■ In her second assignment of error, defendant asserts jurisdiction of the court to hear fundamental issues not previously presented, even after a plea of guilty. In the case of Dunn v. State, Okl.Cr., 488 P. 2d 606 (1971), we answered this question as follows:

"We have consistently held that where an appeal is taken by an accused from a judgment entered upon a plea of guilty, the appeal will ordinarily present only such questions as go to the free and voluntary character of the plea, or that accused was not of competent intelligence, or was not advised of his legal rights and the nature and consequences of his plea, or as to the sufficiency of the indictment or information to confer jurisdiction, or the legality of the sentence."

Here, defendant knowingly and voluntarily entered a plea of guilty to the act of Delivery of LSD. A plea of guilty admits the facts pleaded in the Information. This Court has repeatedly held that a plea of guilty must stand when such a plea was voluntarily and knowingly given with the advice of counsel in a court of competent jurisdiction. In Turner v. State, Okl.Cr., 474 P.2d 670 (1970), we said:

"[T]he defendant entered the pleas of guilty in the trial court, while represented by counsel of his own choice, *because he was guilty* and that such pleas were not entered as a result of any promise, threats or coercion. Under such circumstances it appears that the trial court had jurisdiction of the person, subject matter and authority under law to pronounce the judgments and sentences im-

posed, and that the defendant, by freely and voluntarily entering his pleas of guilty, while represented.by counsel, with full knowledge of the nature and consequence of such pleas, waived any objection to any irregularities occurring prior to the entry of such pleas." [Emphasis added]

We further said, in Osborne v. State, Okl. Cr., 487 P.2d 364 (1971):

"Defendant contends the plea was entered as the result of misunderstanding since he was mistaken that his co-defendants would be released as a result of his plea. It is true that where a guilty plea was entered as a result of inadvertence, ignorance, misunderstanding, misapprehension, or without deliberation, it is an abuse of discretion to deny an application to withdraw the plea of guilty. Conley v. State, Okl.Cr., 444 P.2d 252 (1968). However, we find no mistake or ignorance which would deprive the plea of its voluntary, intelligent, and competent character. Defendant does not allege, nor does the record show, that his plea was induced by a promise from anyone in authority to release the other co-defendants. Nor does defendant contend that his admission was inaccurate. Defendant may or may not have been singularly motivated by his desire for the release of the co-defendants. But any mistake here was defendant's own doing, free of outside influences, and does not amount to inducement or coercion rendering the plea involuntary."

In the instant case the defendant admitted the accuracy of the facts in her plea of guilty. There was no mistake as to the facts. Misunderstanding or ignorance of the application of the applicable statute does not change the commission of the facts of the unlawful delivery.

Defendant places considerable reliance on the case of Manning v. State, Okl.Cr., 374 P.2d 796 (1962), wherein we indicated that a guilty plea given as a result of misunderstanding and misapprehension or ignorance where there is an application for

withdrawal of the plea made in good faith, is an abuse of discretion in the trial court to not permit such withdrawal.

However, in *Manning,* supra, defendant was assured by her mother that all she would receive upon her plea of guilty was a lecture from the court about bogus checks. The defendant waived her right to counsel and received a ninety (90) day jail sentence. Here, defendant was under no such misapprehension about the consequences of the guilty plea. She voluntarily entered a plea of guilty and has freely admitted the facts of her offense. Further, she was was represented by counsel at all times.

 Consequently, we hold the District Court's denial of Post-Conviction Relief must be affirmed, as there is no jurisdiction in this Court to go behind the plea of guilty, under the circumstances of this case, as a plea of guilty was apparently free, voluntary, and made with the consequences in mind.

In summary, we hold that a person who freely and voluntarily enters a plea of guilty, with full knowledge of the nature and consequences of such plea, while represented by counsel and after being fully informed of her constitutional rights and effectively waives the same, is estopped from later urging that had she proceeded to trial, the evidence of the State would not have supported a conviction for the charge for which she pled, or would have resulted in an acquittal.[1] It should be borne in mind that the plea of guilty entered here was entered after the preliminary examination had been conducted.

We must, accordingly, hold that the Denial of Post-Conviction Relief in the trial court should be, and the same is hereby, affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissents to results reached) :

I am compelled to dissent to the results reached in this decision; because as it stands, I believe it is a miscarriage of justice. The facts of the instant case do not sustain a conviction for unlawful delivery of a controlled dangerous substance, but do sustain a conviction for possession.

As I view the facts of this case, it falls clearly within this Court's decision in Posey v. State, Okl.Cr., 507 P.2d 576 (1973), and the results reached herein should be the same as those reached in the Posey case.

This decision attempts to avoid the Posey decision by relating that no agency relationship existed, and emphasizes, "Langley testified he dealt with defendant at all times during this transaction." Such may be true, but as I view the facts, under no stretch of the imagination can it be said that Langley bought the LSD from defendant. Defendant was approached by Langley's informer to get some LSD for him; she was driven to the seller's place in the officer's automobile; she took the officer's money, with which to pay for the substance; and she returned ten dollars to her principal, i. e., Officer Langley. Officer Langley may have intended to purchase the substance from defendant, but she did not have any, so the circumstances developed which caused him to use her as HIS AGENT to procure the substance from

---

1. In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, an opinion written by Justice White, the following language may be found:

"Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. * * * In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it."

someone else who had the substance. That person was also charged as a seller of dangerous drugs. Langley testified:

"We then went and got in my car and proceeded to the Southwest Terrace Trailer Park to the 5th trailer on the second row, with a white picket fence around it, Trailer No. 10. I parked north of that trailer, across the street north from that trailer by a 1968 Ford Torina. At that time Miss Collins got out of the car and went to the trailer and went inside. . . . I might add that before she went in I gave her $50.00 in marked bills and she said it would cost $40.00 and possibly $50.00, and I GAVE HER $50.00 IN MARKED BILLS." (Tr. 4) [Emphasis added]

Officer Langley's testimony continued:

"She remained in the trailer for approximately five minutes and then she came out of the trailer accompanied by Mr. Mark Hollars. They walked across the street and got in the 1968 Torina setting next to me, and I observed them get into the car, they stayed there about five minutes, less than five minutes, approximately two or three minutes, they both got out of the car and walked back to the car and I noticed at that time Mr. Hollars had what appeared to be a plastic baggie in his hand, and they went back into the trailer.

&ast; &ast; &ast; &ast; &ast; &ast;

Then about five minutes later they came out of the trailer, Mr. Hollars went to his vehicle, and Miss Collins came and got back in my vehicle. And I asked her if she had the L.S.D. and she said she did. She took it out of her pocket and handed me a plastic baggie containing approximately 50 small white tablets. And I asked her what the price was and she said $40.00, AND SHE RETURNED $10.00 TO ME." [Emphasis added]

On cross-examination, Officer Langley was asked, "In other words she just went in and got them for you, is that correct?" Officer Langley answered, "The buy was made from her, I guess that is what she was doing when she was inside the trailer."

What the officer was saying was, I sent her in to make the buy for me, because I intended to make my purchase from her, even if I had "to set her up." But, because defendant procured the substance with money furnished by the officer, upon his instructions, how could he then buy from her. She never owned the substance, but only had possession of it, and only because of him. Officer Langley testified, "I did not buy from Mr. Hollars, I bought from Myra Collins." But he did not buy anything from Myra Collins either. The most this defendant is guilty of is Possession of LSD.

As I view the facts of this case, Myra Collins was in almost the same situation that "Tom" enjoyed in this Court's decision in Carter v. State, Okl.Cr., 521 P.2d 85 (1974), except that she did not know she was being used by the officer. In the Carter decision, this Court stated:

"The defendant next urges that the trial court erred in overruling his demurrer to the evidence as the record reflects that any delivery or distribution was made to one 'Tom' and not to Cary Thurman as alleged in the information. The defendant argues that the accusation made by the Information varied from the proof presented at trial and that said variance was fatal. However, said record shows that the defendant handed a bag of pills to Tom who immediately handed them to Thurman and that the defendant and Thurman consummated the financial arrangements. *Tom was only a conduit through which the distribution of drugs was made.* [Emphasis added]

The only difference between Tom's situation and that of Myra Collins was that Tom knew he was acting as a conduit for the police, but Myra Collins had not been so enlightened.

At her second hearing, when defendant attempted to withdraw her plea of guilty, she testified:

"My sister and I were sitting in The Spot drinking beer and we had quite a bunch of beer and we decided we needed to go home. So we saw a young man, Robert Horton, in the Spot and we had him drive us home. We got home and he said, 'Myra, there is a guy coming from Erick that is wanting to buy some acid or something.' He said, 'I have already told him I could get it and everything, and if you could help me out I would appreciate it.

I said, 'I really don't want to' and he said that if I was a friend and if I cared anything about him I would do it. So I said, 'Yes, I know where I can find some, but let me think about it for awhile and we set there and talked about other things, and finally I told him I would go and find out if I could find some, and I felt like I could. I had been around drugs, yes, and so he said that he would be back later with this man."

Defendant did not deny that the two men came to the apartment where she was; that they talked; that she asked one of them to drive her to the place where she could get the substance; that Officer Langley drove her to Mr. Hollars' trailer; that Officer Langley gave her fifty dollars; that she went into the trailer, got the LSD and returned to Officer Langley's car, when she gave him the LSD and returned ten dollars to him. Defendant did deny, however, that the informer telephoned her and talked with her, because she did not have a telephone in her apartment. Defendant also denied selling drugs to anyone.

As I view the facts of this case, defendant could legally be charged with Possession of LSD. To convict her with the unlawful delivery of such substance, under these facts, and for this Court to affirm that conviction is, I believe, a miscarriage of justice. The Attorney General argues that the delivery was unlawful and hence the sentence should be sustained. Under other facts I might agree, but in the instant case I cannot accept the theory that law enforcement officers are employed to instigate such "unlawful deliveries." Likewise, if this Court is to retain any consistency in its decisions, this Court's former decisions should be reasonably followed, at least. Otherwise, the state of law becomes of such fluxuating nature that no one knows what the law means.

Whether or not Langley intended to make defendant his procuring agent is of little consequence. Under these facts he did make the defendant his procurement agent, and she carried out his instructions. This Court stated, in Posey v. State, supra:

"We agree further with the Michigan Court 'that a procuring agent who buys from a third party with funds provided by his principal, and at the principal's request, is far different from the employee of a narcotics peddler. It is only the latter individual who can in any sense be considered a seller of narcotics.'"

This Court also repeated with approval, in Posey v. State, supra, what the Massachusetts Supreme Court stated in Massachusetts v. Harvard, 356 Mass. 452, 253 N.E.2d 346 (1969), as follows:

"At the moment the defendant received the drug he had the control and power to do with it what he willed. In this case he chose to hand it immediately to Martin rather than hold it longer, keep it himself, or otherwise deal with it. Possession ought not to depend on the duration of time elapsing after one has an object under his control. A standard based on duration would be exceedingly difficult to apply. Authorities in other

jurisdictions support this conclusion. [Citations omitted.]."

There was absolutely no showing whatsoever that this defendant had any financial interest in the transaction, or benefit from the sale. She could not even tell Langley for certain what the cost of the LSD would be; and, there was no evidence of association, collaboration, or community of scheme between defendant and the true seller. And even more conclusively is the fact that at one time in Officer Langley's testimony he referred to the LSD, "WHICH WE WERE GOING TO PURCHASE . . ." Consequently, as I view this conviction it clearly falls within this Court's decision in Posey v. State, supra.

Lastly, I do not entirely subscribe to this decision's treatment of defendant's attempt to withdraw her plea of guilty. There is no doubt in my mind but that defendant did enter her plea unknowingly and through misunderstanding. There may not have been a mistake of facts, as recited in this decision, but there was a misapplication of such facts, as I view them. The misapplication of the facts lies in the instance of Officer Langley, who instigated the delivery. Consequently, insofar as the relationship of agency existed, as I perceive the facts, the delivery was not unlawful as contemplated by the law. And, I see the entry of a plea of guilty as being little different from a finding of guilty. If this Court possesses the authority to modify the judgment and sentence on a finding of guilty, then when the appeal reveals a misapplication of the law on a guilty plea, I believe this Court possesses the same authority to modify the judgment and sentence.

Therefore, I dissent to the results reached in this decision and would modify the judgment to Possession of LSD, and modify the sentence to two (2) years imprisonment.