[No. 40856-9-I.   Division One.   May 10, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. SHANE
MICHAEL PADILLA, *Appellant*.

*Richard R. Tassano*; *Kimberly N. Gordon*; and *Kira McCrae*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cynthia Gannett* and *David Ryan, Deputies,* for respondent.

KENNEDY, C.J. — Shane Padilla appeals his conviction for unlawful possession of a firearm in the first degree, asserting that the gun was not a firearm for purposes of RCW 9.41.040(1)(a) because it was disassembled while in his possession. We hold that a disassembled firearm that can be rendered operational with reasonable effort and within a reasonable time period is a firearm within the meaning of RCW 9.41.010(1). Because unrefuted testimony indicated that the pistol found in Padilla's possession could be reassembled in a matter of seconds, the evidence was sufficient to support the jury's verdict. Accordingly, we affirm the trial court's entry of judgment on the verdict.[1]

## FACTS

December 7, 1996, Lieutenant Steve Cercone of the Bellevue Police Department confronted Padilla and Jeff Muggy who were standing close together behind a 7-11 store. Lighting was poor. The men were about two feet apart and appeared to be looking at something. Cercone shone his

---

[1] Padilla's remaining contentions, which we also find to be without merit, are treated in the unpublished portion of this opinion.

flashlight on the two men, announced himself, and asked what they were doing. Padilla turned, and Cercone saw a gun in Padilla's hand. Cercone pulled his service weapon. Padilla immediately tossed the handgun toward the officer. According to Cercone, the gun was in one piece before it hit the ground. Padilla testified that the gun was disassembled while in his possession. The handgun was recovered in three pieces.

Officer Lum, a firearms instructor with the Bellevue Police Department, testified that it took him about five seconds to reassemble the gun that had been in Padilla's possession. He test-fired the gun and found it operable. Lum testified that, in his opinion, if the gun were thrown on the ground it was more probable than not that it would disassemble due to a weakened cylinder spring pin. On cross-examination, defense counsel demonstrated that Lum had conducted no tests to determine how easily the gun would come apart, could not quantify the height from which the gun must be thrown to cause it to disassemble, and could not quantify the weakness of the spring.

Padilla testified on direct examination that Muggy handed him what appeared to be three pieces of a weapon, that he could see it, and that he knew it was a gun when it was handed to him; on redirect he testified that he did not realize what the gun was until it was in his hand.

The jury responded to special interrogatories, indicating that: (1) the jury did not unanimously agree beyond a reasonable doubt that the gun was assembled while in the possession or control of the defendant; and (2) the jury nonetheless unanimously concluded, beyond a reasonable doubt, that the gun was a firearm.

## DISCUSSION

### For Purposes of the Possession Offenses Found in RCW Chapter 9.41, a Disassembled Firearm that Can Be Rendered Operational with Reasonable Effort and Within a Reasonable Time Period is a Firearm Within the Meaning of RCW 9.41.010(1)

■ "Firearm" is defined, for the purposes of the posses-

sion offenses found in RCW Chapter 9.41, as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(1). Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990).

■ The statutory definition of "firearm" is ambiguous because the language "may be fired" is susceptible to more than one reasonable interpretation. *See Harmon v. Department of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998). "May" means "have the ability or competence to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (1986). But "may be fired" fails to qualify at what point in time the gun must be capable of firing: at the time of manufacture? while in the defendant's possession? at a time near to the time of the defendant's possession? at any time, past, present, or future?

■■ Because the definition is ambiguous, "our primary duty is to ascertain and give effect to the intent and purpose of the Legislature." *Harmon*, 134 Wn.2d at 530.[2] "In construing a statute, we may look to the legislative history of the statute as well as to other statutes dealing with the same subject matter in order to discern legislative intent." *Id.*

■ In amending the firearms statutes in 1994, the Legislature's intent was, among other things, to reduce violence. LAWS OF 1994, 1st Sp. Sess. ch 7, § 101. "State efforts at reducing violence must include . . . reducing the unlawful use of and access to firearms[.]" *Id.* The plain language of the prohibitions in chapter 9.41 RCW demonstrates the Legislature's clear goals of keeping all firearms

---

[2]The rule of lenity "only applies when a penal statute is ambiguous *and* legislative intent is insufficient to clarify the ambiguity." *In re Charles*, 135 Wn.2d 239, 250 n.4, 955 P.2d 798 (1998).

out of the hands of certain individuals and certain firearms out of the hands of all individuals. As we observed in *State v. Anderson*, 94 Wn. App. 151, 162, 971 P.2d 585 (1999), *review granted*, 138 Wn.2d 1007 (1999), "[i]t begs reason to assume that our Legislature intended to allow convicted felons to possess firearms so long as they are unloaded, or so long as they are temporarily in disrepair, or so long as they are temporarily disassembled, or so long as for any other reason they are not immediately operable." Such a result would allow convicted felons to escape an unlawful possession charge simply by keeping a gun disassembled.

At the same time, "may be fired" indicates legislative intent that a gun rendered *permanently* inoperable is not a firearm under the statutory definition here at issue because it is not ever capable of being fired. Therefore, we hold that a disassembled firearm that can be rendered operational with reasonable effort and within a reasonable time period is a firearm within the meaning of RCW 9.41.010(1). *Cf. State v. Faust*, 93 Wn. App. 373, 967 P.2d 1284 (1998) (holding that a malfunctioning firearm is a firearm for purposes of RCW 9.94A.310(3)(b) (the statute providing for a mandatory three-year sentencing enhancement for second degree assault where "the offender . . . was armed with a firearm as defined in RCW 9.41.010")).

Our holding also finds support from courts in other jurisdictions confronting a similar issue. The Michigan Supreme Court addressed the question of "whether two defendants can be charged with possession of one short-barreled shotgun contrary to [Michigan statute] when each defendant had in his possession one of the two component parts that comprised the short-barreled shotgun." *People v. Hill*, 433 Mich. 464, 446 N.W.2d 140, 141 (1989). A Michigan statute defined a firearm as including " 'any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion[.]' " *Id.* at 144 n.7 (quoting MICH. STAT. ANN. § 2.212(20)). The court held that "temporarily inoperable firearms which can be

made operable within a reasonable time fall within the purview of the statutes that govern the use and possession of firearms." *Id.* at 146. The court was "persuaded that there are strong policy considerations that support our holding which discourages the practice of 'breaking down' a shotgun to escape prosecution for illegal possession of weapons which our legislature has clearly prohibited." *Id.* at 141.

Similarly, in *State v. Rardon*, 185 Wis. 2d 701, 518 N.W.2d 330, 330-31 (Ct. App. 1994), the court confronted the issue of "whether the possession of a disassembled and inoperable firearm by a person previously convicted of a felony is a violation of [Wisconsin statute]." The applicable statutory definition provided that "firearm" means "a weapon that acts by force of gunpowder." *Id.* at 331-32. Noting that many of today's weapons are easily taken apart, the court concluded that "firearm" is "appropriately defined as a weapon that acts by force of gunpowder to fire a projectile irrespective of whether it is inoperable due to disassembly." *Id.* at 332. The court added: "This conclusion furthers the legislature's intention that those convicted of a felony not be allowed to possess *any* firearms—operable, inoperable, assembled or disassembled. To reach the opposite conclusion could lead to potentially absurd results[.]" *Id.*

In the present case, although the pistol in Padilla's possession may have been disassembled, unrefuted testimony indicated that it could be reassembled in a matter of seconds. Therefore, we find sufficient evidence in the record to support Padilla's conviction, and affirm the trial court's entry of judgment on the verdict.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

GROSSE and ELLINGTON, JJ., concur.

Review denied at 139 Wn.2d 1003 (1999).