[No. 59701-9-I.   Division One.   February 2, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRENCE LEVINE RELEFORD, *Appellant*.

480

482

*Eric Broman* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Catherine M. McDowall, Deputy*, for respondent.

¶1 DWYER, A.C.J. — In order to establish that a foreign conviction was for an offense comparable to a Washington felony, the State need not independently prove those facts related to the foreign conviction that were admitted by the defendant. Here, Terrence Releford was twice convicted in Oklahoma of burglary in the second degree based on guilty pleas. In Oklahoma at the time of Releford's guilty pleas, such a plea constituted an admission of "the facts pleaded in the Information." *Collins v. State*, 1974 OK CR 79, 521 P.2d 826, 828. The information in each of the two cases in

which Releford entered guilty pleas alleged that he entered a business and a residence, respectively, for purposes of committing a theft—facts that would support burglary convictions in Washington. Notwithstanding this, Releford asserts that the State failed to prove that his Oklahoma burglary convictions were for offenses factually comparable to Washington burglary offenses because the State did not independently prove that Releford entered buildings but, instead, relied on certified copies of the Oklahoma informations to do so. We disagree that this was improper and explicitly announce that the State may prove factual comparability by producing certified copies of foreign charging documents and evidence that the defendant pleaded guilty if the law of the state wherein the defendant entered the plea, at the time of the plea, provided that such a plea constituted an admission of the facts alleged in the charging documents.

¶2 Releford also contends that his conviction for unlawful possession of a firearm must be reversed because the antique replica gun he was found carrying was missing certain components, because the jury instructions in his trial were erroneous in various ways, and because his trial counsel's performance did not meet constitutional expectations. Finding these additional arguments also meritless, we affirm.

I

¶3 Jason Scamman was driving a car when he saw a man whom he later identified as Releford walking down the street carrying a backpack that closely resembled a backpack that Scamman owned. Assuming the similarity to be a coincidence, Scamman continued home.

¶4 When he arrived, Scamman discovered that his apartment had been burglarized while he was away. Several items were missing, including his backpack. He immediately returned to the area where he had just seen Releford, where he observed Releford waiting at a bus stop.

¶5 Scamman then called the police, with whom he continued to speak as he saw Releford board a bus, still carrying the backpack. As the bus pulled away, Scamman followed it in his car. Soon afterward, the police radioed the driver of the bus, who stopped the vehicle. As police officers approached the stopped bus, Releford disembarked and began walking through a nearby parking lot.

¶6 The officers followed Releford and stopped him. One officer asked Releford whether the backpack belonged to him, to which Releford responded that it did not. Releford informed the officer that he had found the backpack behind a gas station.

¶7 Another officer asked Releford what was in the backpack. Releford began, "Well, there is some . . ." but then paused and stated, "Man I don't have any idea what is in that backpack. I didn't even open it to look."

¶8 While this was happening, Scamman returned to his apartment. A brief inventory showed that the backpack, two pistols, and a DVD (digital video disk) were missing. Scamman then returned to the scene where Releford was detained, positively identified Releford and the backpack, and identified the two pistols and the DVD that police officers found inside as being his.

¶9 Both of the pistols were antique replicas. Scamman described one as a ".45 caliber flintlock pistol." He had ordered this pistol as a kit from a business on the Internet and had assembled it himself. The other pistol was also an antique replica but was only partially assembled.

¶10 Releford was charged with possession of a stolen firearm (count I), unlawful possession of a firearm in the first degree (count II), and unlawful possession of a firearm in the second degree (count III).[1] As alternative predicate offenses for the charge on count II, the State alleged that Releford had previously been convicted twice in Oklahoma

---

[1] All of the charges were based on the .45 caliber pistol, rather than the pistol that Scamman had not yet finished assembling. Because of this, we make no further reference to the disassembled pistol.

of burglary in the second degree and once in California of sale or transportation of a controlled substance. As the predicate offense for the charge on count III, the State alleged that Releford had previously been convicted in Washington of possession of stolen property in the second degree.

¶11 At trial, the State presented evidence of these prior convictions, to which Releford objected, arguing that the out-of-state convictions were for offenses not comparable to Washington felony offenses for purposes of unlawful possession of a firearm. The parties agreed that whether the prior convictions were comparable was a legal issue to be determined by the court as a predicate to its ruling on the admissibility of the certified records of the convictions for purposes of the State's proving that the convictions had actually occurred. Based on the combination of the Oklahoma charging documents and Releford's guilty pleas to the crimes that they alleged, the court ruled that Releford's Oklahoma convictions were comparable to serious offenses in Washington for purposes of admitting the certified records. At trial, these records were introduced, along with fingerprint evidence linking Releford to the convictions.

¶12 The jury was instructed that, in order for it to convict Releford of unlawfully possessing a firearm in the first degree, the State was required to prove beyond a reasonable doubt that Releford had "previously been convicted of . . . Burglary Second Degree (Oklahoma Case No. CF-00-262), which is a serious offense; OR . . . Burglary Second Degree (Oklahoma Case No. CF-00-279), which is a serious offense." The jury instructions also stated that "Burglary Second Degree, as defined by Oklahoma law, is a 'serious offense' in the State of Washington."

¶13 The jury acquitted Releford of count I but found him guilty of having committed both count II and count III. In sentencing Releford, the trial court stated that it would not enter judgment on count III because "[t]he two offenses [count II and count III] only constitute one conviction." The

court then entered judgment on count II only, sentencing Releford accordingly.

¶14 Releford appeals.

II

¶15 Releford first contends that the State put forth insufficient evidence to establish that his prior Oklahoma burglary convictions were for offenses comparable to "serious offense[s]" in Washington. Thus, according to Releford, those convictions could not be used as the predicate offenses required to prove that his possession of a firearm was unlawful. Releford contends that this is so because the State was not entitled to rely on Releford's guilty pleas to the offenses as alleged in the Oklahoma charging documents, and thus failed to demonstrate that the burglary convictions were factually comparable to Washington burglary convictions. However, under Oklahoma law at the time Releford entered his guilty pleas, such a plea admitted the facts alleged in the information. Because Releford is incorrect in asserting that his admission to the facts contained in the Oklahoma charging documents could not be used to prove factual comparability, his argument fails.

¶16 Unlawful possession of a firearm in the first degree, the offense upon which the trial court entered judgment as to count II, requires that the State prove that the defendant "has . . . been convicted . . . in this state or elsewhere of any serious offense as defined in this chapter." RCW 9.41.040(1)(a). For purposes of an out-of-state conviction, a "serious offense" is "[a]ny felony offense . . . that is comparable to a serious offense" in Washington at the time the offense was committed. RCW 9.41.010(12)(o). If an out-of-state statute prohibits a broader range of conduct than the proposed Washington counterpart—i.e., the elements of the out-of-state offense are not legally comparable—the State must prove that the offenses are factually comparable. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005).

¶17 The State does not dispute that the Oklahoma and Washington robbery statutes at issue here are not legally comparable. This is so because Releford could have been convicted of burglary in the second degree in Oklahoma by breaking into and entering "any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection" with intent to steal something therein. OKLA. STAT. title 21, § 1435. In contrast, in Washington, burglary in the second degree requires that the defendant have entered a "building *other than* a vehicle or a dwelling." RCW 9A.52.030(1) (emphasis added).

¶18 Releford contends that the State failed to prove factual comparability because it relied for its proof on the criminal informations by which Releford was charged and to which he entered guilty pleas. According to Releford, this evidence was insufficient because the facts in these charging documents "were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction," by virtue of his guilty pleas, as required by *Lavery*, 154 Wn.2d at 258. Specifically, Releford points to our decision in *State v. Thomas*, 135 Wn. App. 474, 144 P.3d 1178 (2006), *review denied*, 161 Wn.2d 1009 (2007), to support his contention that the reliance by the State and the trial court on the Oklahoma informations constituted an improper determination of facts that should have been submitted to the jury.

¶19 In *Thomas*, this court reversed a determination of factual comparability made by the trial court as being inconsistent with the jury-trial requirements articulated by the United States Supreme Court in *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and applied in the comparability context by our Supreme Court in *Lavery*. *Thomas*, 135 Wn. App. at 488. Specifically, we stated that the trial court had incorrectly made a finding that, in analyzing whether a California burglary conviction

was factually comparable to a Washington burglary conviction, the State had proved that the defendant's entry of a building had been "unlawful" based on the allegation that he did so in the charging document, combined with a jury verdict convicting him of the crime charged. *Thomas*, 135 Wn. App. at 487. The rationale for this decision was the fact that unlawful entry was not an element of the California offense, as it was under Washington law, and thus there was a "lack of incentive for Thomas to admit or mount a defense to an allegation that [did] not affect the determination of guilt." *Thomas*, 135 Wn. App. at 487 (citing *Lavery*, 154 Wn.2d at 258).

¶20 But our opinion in *Thomas* makes clear that, in order to establish factual comparability, the State need independently prove only those facts that, when alleged by the State, have not been *admitted* by the defendant. *Thomas*, 135 Wn. App. at 482 ("Where the underlying facts were proved to a trier of fact beyond a reasonable doubt, *or admitted or stipulated to*, *Shepard* and *Lavery* allow the sentencing court to decide whether an out-of-state conviction was based on facts that would violate a comparable Washington offense." (emphasis added)).

¶21 In Oklahoma, "[a] plea of guilty admits the facts pleaded in the Information." *Collins*, 521 P.2d at 828; *see also Lozoya v. State*, 1996 OK CR 55, 932 P.2d 22, 30 ("pleas of guilty . . . admit[ ] the facts pleaded in the information"). Releford argues that this rule has not been reexamined by the Oklahoma courts in light of *Shepard*. But *Shepard* had not been decided when Releford entered either of his guilty pleas in Oklahoma in 2000 and, therefore, certainly had no effect on his state of mind in determining to do so. There is no basis for us to conclude that, where a defendant enters a plea of guilty at a point in time and in a foreign jurisdiction where such a plea constitutes an admission of the facts alleged by the government in the charging document, such an admission cannot be later relied upon to prove factual comparability for purposes of a subsequent sentencing in Washington.

¶22 To the contrary, the appropriate analysis is that which was implicitly utilized by the trial court herein: the facts supporting a prior conviction must either be proved beyond a reasonable doubt *or* admitted by the defendant. Put another way, if the defendant admitted facts in a prior proceeding, then they need not be independently proved by the State to establish factual comparability. In order to determine that which was admitted by the defendant as a result of the entry of a guilty plea, it is necessary to look to the law of the state in which the defendant entered the plea *as that law existed at the time of the plea*—that is, the law from which the defendant could reasonably expect the consequences of the guilty plea to flow.

¶23 Here, Oklahoma law at the time of Releford's guilty pleas established that those pleas admitted the facts alleged in the informations. One of the Oklahoma informations by which Releford was charged and to which he pleaded guilty alleged that he unlawfully broke into and entered a "business." Because the named business was a building, Releford pleaded guilty to facts that would support a conviction for burglary in the second degree under Washington law, which is statutorily classified as a "serious offense." RCW 9.41.010(11)(a), (12)(a). Similarly, the other Oklahoma burglary information charged that Releford unlawfully broke and entered into a "residence." Residential burglary is also a "serious offense" for purposes of unlawful firearm possession. RCW 9.41.010(11)(a), (12)(a).

¶24 The State introduced sufficient evidence to prove factual comparability. There was no error.

III

¶25 Releford next contends that the State introduced insufficient evidence at trial by which the jury could have concluded that he was in possession of a "firearm," as that term is defined by Washington law. The basis for this contention is Releford's assertion that, because the flintlock pistol found in the stolen backpack that he was carrying

was missing its firing flint, the leather piece that wraps around the flint, gunpowder, and the ball shot and wadding that serve as the weapon's projectile, the pistol could not be made operational within a reasonable time and with reasonable effort. Releford's contention is incorrect, however, because it is based on a misunderstanding of the nature and construction of the pistol. In fact, the parts that the pistol was missing are those which, in modern ammunition, are contained within a single, one-piece cartridge. In other words, all that the pistol required in order to be fully operable was ammunition. It is well established under Washington law that, for purposes of the offense of unlawful possession of a firearm, a weapon does not cease to be a "firearm" simply because it is not loaded. Moreover, based on the evidence introduced by the State, the jury reasonably could have concluded that Releford could have obtained the ammunition for the pistol with reasonable effort and in a reasonable time. Accordingly, the State introduced sufficient evidence for the jury to conclude that Releford possessed a firearm.

¶26 Evidence is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. A claim of insufficiency admits the truth of the State's evidence, and all reasonable inferences must be drawn in favor of the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

¶27 For purposes of the offense of unlawful possession of a firearm in the first degree, "firearm" is defined as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(1). This definition is ambiguous because it is unclear exactly what "may be fired" means. *State v. Padilla*, 95 Wn. App. 531, 534, 978 P.2d 1113 (1999). Accordingly, the courts have attempted to provide certainty with respect to the statute's application by interpreting it in such a way that, for purposes of unlawful possession of a firearm, "a disassembled firearm that can be rendered operational with

reasonable effort and within a reasonable time period is a firearm within the meaning of RCW 9.41.010(1)." *Padilla*, 95 Wn. App. at 535. Similarly, an unloaded gun is still a "firearm" because it can be rendered operational merely by inserting ammunition. *State v. Berrier*, 110 Wn. App. 639, 645, 41 P.3d 1198 (2002). The jury that found Releford guilty was correctly instructed as to these rules.

¶28 Releford nevertheless contends that the State introduced insufficient evidence to support the jury's guilty verdict because the replica pistol at issue did not have its firing flint, the leather piece that wraps around the flint, its gunpowder, or its projectile ball and wadding. Releford contends that these absences require adoption of the legal conclusions that the pistol had never been fully assembled and, thus, that the pistol could not be rendered operable within a reasonable time or with reasonable effort.

¶29 This chain of reasoning does not withstand scrutiny. Contrary to Releford's characterization, the absence of these components does not mean that the jury was required to conclude that Scamman had never finished assembling the pistol. Indeed, Scamman himself testified that the pistol was completely assembled when it was stolen from his home and, thus, was also fully assembled when it appeared in the stolen backpack carried by Releford:

[The State]: Now, just focusing on the .45 caliber flintlock, how did you get that gun?

[Scamman]: I ordered it off the Internet.

[The State]: Okay. And when you ordered it, was it ready to go?

[Scamman]: No, it was in a kit form. I had to put it together myself.

[The State]: And did you put it together?

[Scamman]: Yes, I put it together.

[The State]: So as of June 16, 2006, you completed putting it together?

[Scamman]: Yes.

Releford's argument amounts to nothing more than an insistence that the jury was required to disregard this testimony. It was not.

¶30 Moreover, although Releford is indisputably correct that the pistol could not be fired without, at a minimum, the ball and powder, that conclusion is nothing more than an assertion that the gun was unloaded. As the State convincingly demonstrated at trial, the missing flint, leather piece, ball, wadding, and powder together perform precisely the same functions that are combined in a single modern ammunition cartridge. The fact that this technology is dated does not render it something other than what it is: ammunition. There is no dispute that an unloaded firearm is still a firearm for purposes of the offense that Releford was convicted of having committed. *Berrier*, 110 Wn. App. at 645 (citing *State v. Faust*, 93 Wn. App. 373, 380-81, 967 P.2d 1284 (1998)).

¶31 The only authority that Releford cites to the contrary, *State v. Carter*, 138 Wn. App. 350, 157 P.3d 420 (2007), is inapplicable. That case did not address a charge of unlawful possession of a "firearm" as defined by RCW 9.41.010(1). Instead, the charge at issue was unlawful possession of a "machine gun" as defined by RCW 9.41.010(7). That statute specifically requires that a weapon must have an ammunition supply device in order for it to qualify as a "machine gun." *Carter*, 138 Wn. App. at 357-58. A "firearm," as defined by RCW 9.41.010(1), has no similar requirement. Indeed, in determining that the State was required to prove the presence of an ammunition supply device in order to establish that a weapon is a machine gun, the *Carter* court expressly distinguished *Padilla* and *Berrier* as addressing different statutory requirements. *Carter*, 138 Wn. App. at 359-60.

¶32 Finally, Releford's contention that the jury could not have reasonably found that he could render the pistol operational within a reasonable time and with reasonable effort is simply unsupported in the law. The State presented uncontroverted evidence that the only effort required to

make the pistol fully operational was a trip to obtain the ammunition at a nearby specialty gun shop. Was such effort reasonable? Nothing to which Releford cites supports his assertion that the jury could not answer this factual question in the affirmative.

¶33 The State presented sufficient evidence to support the jury's determination that the pistol with which Releford was arrested was a "firearm."

IV

¶34 Releford next contends that, if the evidence that the State presented was sufficient for the jury to conclude that the pistol that Releford was found carrying was a "firearm" within the meaning of RCW 9.41.010(1), then that statute is unconstitutionally vague as applied to him through the court's instructions to the jury. This argument is without merit because unobjected-to jury instructions are not subject to constitutional vagueness challenges on appeal.

¶35 Courts engage in constitutional due process vagueness analysis to ascertain the legitimacy of statutes and other official policies, which must be sufficiently clear for ordinary people to conform their behavior to the law. This rationale is inapplicable to jury instructions:

> Vagueness analysis is employed to ensure that ordinary people can understand what conduct is proscribed and to protect against arbitrary enforcement of law. *See City of Bellevue v. Lorang*, 140 Wn.2d 19, 30, 992 P.2d 496 (2000). *This rationale applies to statutes and official policies, not to jury instructions.* Unlike citizens who must try to conform their conduct to a vague statute, a criminal defendant who believes a jury instruction is vague has a ready remedy: proposal of a clarifying instruction.

*State v. Whitaker*, 133 Wn. App. 199, 233, 135 P.3d 923 (2006) (emphasis added).

¶36 Notwithstanding that he did not object to the definition of "firearm" given in the jury instructions, and

notwithstanding that the instruction correctly stated the law as set forth in *Padilla*, Releford contends that we should not apply *Whitaker*'s holding concerning preserving vagueness challenges to jury instructions. This is so, according to Releford, because (1) "firearm" is a statutory term with a specific meaning that must be defined in the jury instructions and (2) his counsel did, in fact, propose a clarifying instruction.

¶37 Our Supreme Court has succinctly stated why the first basis upon which Releford urges us not to follow *Whitaker* is meritless: " 'The constitutional requirement is only that the jury be instructed as to each element of the offense charged. Here the jury was so instructed. The failure of the court . . . to define further one of those elements is not within the ambit of the constitutional rule.' " *State v. Scott*, 110 Wn.2d 682, 689, 757 P.2d 492 (1988) (citation omitted) (quoting *State v. Ng*, 110 Wn.2d 32, 44, 750 P.2d 632 (1988)). The trial court did define the term "firearm." It did so consistent with both the language of RCW 9.41.010(1) and this court's holding in *Padilla*. By failing to object to the instruction, Releford waived any claim of error.

¶38 Moreover, Releford's second stated basis for ignoring *Whitaker* is simply untrue. Releford did *not* propose a clarifying instruction with respect to the definition of "firearm." Rather, he proposed a definition of "firearm" that was limited to the terms of the statute and failed to incorporate *Padilla*'s clarifying language. This instruction was *more* ambiguous than the one actually given.

¶39 Any challenge to the trial court's instructions concerning the definition of "firearm" was waived. Releford's assertions to the contrary are unavailing.

V

¶40 Releford next contends that one of the jury instructions that he did in fact propose was incorrectly rejected by the trial court. The "to-convict" instruction

given by the trial court stated that, in order to find Releford guilty of unlawfully possessing a firearm, the jury was required to find that he "knowingly had a firearm in his possession or control," in addition to having been previously convicted of a qualifying crime. Releford argued below and contends on appeal that the trial court should have instead instructed the jury that he was required to know "that he had a firearm, *as defined in these instructions*, in his possession." (Emphasis added.) According to Releford, the trial court's refusal to incorporate some indication that Releford was required to know the legal definition of the term "firearm," in addition to knowing that he possessed the pistol with which he was found, rendered the trial court's instructions erroneous and now requires reversal of his conviction. Because Releford's proposed instruction misstated the law, however, the trial court correctly declined to give it.

¶41 Unlawful possession of a firearm is not a strict liability crime in Washington; "knowing possession" is an element of the offense. *State v. Anderson*, 141 Wn.2d 357, 359, 5 P.3d 1247 (2000). Under Releford's formulation of this requirement, the State not only was required to prove that Releford knew that he was in possession of a weapon that the State could show met the definition set forth in RCW 9.41.010(1), but was also required to prove that Releford knew that the weapon in his possession—which he knew that he possessed—met RCW 9.41.010(1)'s definition. Thus, under Releford's proposed instructional requirement, unless the State could prove beyond a reasonable doubt not only that Releford knew that a pistol was in his possession, but also that he knew that the pistol could be rendered operational in a reasonable time and with reasonable effort, Releford's conviction cannot not now be sustained.

¶42 This is not what our Supreme Court meant in *Anderson* when it implied a knowledge element into the statutory offense of unlawful possession of a firearm. Rather, the Supreme Court explained that it was unwilling to presume that perfectly innocent conduct—"unwitting

possession" of a firearm—had been criminalized by the legislature. *Anderson*, 141 Wn.2d at 360-61, 364-66. This focus is unsurprising. In *Anderson*, the accused's primary defense was that the car in which the firearm was found did not belong to him, and that he did not realize that the gun was present in the car until it was found by the officers who arrested him. 141 Wn.2d at 359.

¶43 Here, Releford's contention has nothing to do with whether he knew that the backpack with which he was found contained a pistol. The jury was correctly instructed with respect to this requirement and obviously disbelieved Releford's statement to the police that he was unaware of the backpack's contents. Rather, the only meaningful distinction between the instruction that was given and the instruction that Releford argues should have been given is Releford's insertion of the phrase "as defined in these instructions" in the latter. This creates a secondary knowledge requirement—knowledge of the legal definition of "firearm"—that, in addition to appearing nowhere the text of the statutes setting forth the offense of which Releford was convicted, cannot be reasonably inferred from their text.

¶44 The only authority that Releford cites for the contrary proposition is *State v. Williams*, 158 Wn.2d 904, 148 P.3d 993 (2006). In *Williams*, the court examined the case of a man charged with illegally possessing a short-barreled shotgun. 158 Wn.2d at 907. As the court explained, there were "three possible points at which knowledge might be relevant: knowledge of the possession itself; knowledge that possessing a short-barreled shotgun, short-barreled rifle, or machine gun is illegal; and knowledge of the weapon's characteristics that makes possession of the weapon unlawful." *Williams*, 158 Wn.2d at 909. The court held that, in order for the defendant to be convicted of the offense, the State was required to prove that "a defendant knows, or should know, the characteristics of the firearm that make it unlawful." *Williams*, 158 Wn.2d at 905.

¶45 That is very different from the knowledge requirement proposed by Releford, which would, in essence, have required that Releford know not only that he possessed the weapon, but also that the weapon could be rendered functional with relative ease. This type of knowledge is not required by *Williams*, where the specific physical characteristics of the weapon at issue provided the basis for the charged offense. Rather, here, Releford was prohibited from possessing *any* firearm by virtue of his prior criminal convictions. The trial court correctly observed this distinction in response to Releford's request for the altered jury instruction:

> [M]y reading . . . is that what made it illegal for Mr. Williams to possess that firearm was a physical characteristic of the firearm, that being the length of the barrel, as opposed to this case where it is not so . . . . [I]n this case it is Mr. Releford's status as a convicted felon which arguably makes it unlawful for him to possess a firearm as opposed to a physical characteristic of the firearm. If it is not a firearm, then there is no crime.

This statement of the law also correctly reflects our statement in *Faust* that a "gun need not be loaded or even capable of being fired to be a firearm," so long as it is a real gun. 93 Wn. App. at 380.

¶46 There was no error.

## VI

¶47 Releford next contends that he was denied his constitutional right to effective assistance of counsel due to his attorney's agreement that the trial court could determine the comparability of Releford's Oklahoma burglary convictions as a matter of law, and instruct the jury accordingly, as well as instruct the jury on the definition of "firearm" consistent with this court's opinion in *Padilla*. But Releford's attorney was correct that, in this case, com-

parability was a legal issue for the trial court to decide.[2] The instruction defining "firearm" was also correct. Thus, the jury instructions were not erroneous. Because the instructions were unobjectionable, Releford's counsel was not ineffective for not objecting to them.

¶48 "A defendant is denied effective assistance of counsel if the complained-of attorney conduct (1) falls below a minimum objective standard of reasonable attorney conduct, and (2) there is a probability that the outcome would be different *but for* the attorney's conduct." *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Counsel is not ineffective for failing to object in the absence of error. *See, e.g., State v. Shaver*, 116 Wn. App. 375, 387, 65 P.3d 688 (2003).

¶49 With respect to the instructions stating that Releford's Oklahoma burglary convictions would constitute "serious offense[s]" if found by the jury, Releford's counsel was correct—and thus not ineffective—in agreeing that comparability was a legal issue for the court to decide. As stated earlier, under Oklahoma law, a plea of guilty admits the facts stated in the information. *Collins*, 521 P.2d at 828. Here, the facts stated in one Oklahoma information were that Releford entered a business—a building—for the purpose of theft. The other Oklahoma information charged that Releford entered a dwelling for the purpose of theft. Releford pleaded guilty to both separate charges, establishing that he entered buildings in order to commit the charged crimes, instead of entering vehicles or other structures. Entry of a building for purposes of theft supports a

---

[2] Releford also contends that the trial court's instructions to the jury that Releford's Oklahoma convictions, if found to exist, would constitute "serious offense[s]" impermissibly commented on the evidence. This contention is nothing more than a reformulation of the assertion that the trial court was not allowed to determine factual comparability as a matter of law and instruct the jury accordingly. But Releford expressly agreed that the trial court, not the jury, should decide the issue of comparability. Moreover, Releford did not object to the instructions as given, nor does he contend that the purported error affected any constitutional right. Accordingly, any objection that Releford might now raise as to the instructions has been waived. RAP 2.5(a); *Scott*, 110 Wn.2d at 690.

conviction for burglary in the second degree under Washington law. RCW 9A.52.030. Entry of a dwelling for purposes of theft supports a conviction for residential burglary. RCW 9A.52.025. Both crimes are serious offenses. RCW 9.41.010(11)(a), (12)(a). The only question properly submitted to the jury was whether Releford in fact committed the crimes charged, a question that *was* argued by Releford's counsel. The jury instructions were proper.

¶50 Similarly, the "firearm" jury instruction was proper. In addition to restating the language of RCW 9.41.010(1)—which this court has held is ambiguous, and thus confusing, *Padilla*, 95 Wn. App. at 534—the instruction accurately and completely stated the clarification adopted by our case law.

## VII

¶51 Finally, Releford contends that his "conviction" on count III—unlawful possession of a firearm in the second degree—violates double jeopardy due to his conviction for the more serious offense of unlawful possession of a firearm in the first degree on count II, which was based on the same criminal conduct.

¶52 Releford is likely correct that his being convicted on count III as well as count II would violate double jeopardy, but no remedy is necessary because there was no such conviction. The trial court expressly modified its judgment and sentence to eliminate any ambiguity: although the jury found Releford guilty of having committed the crime charged in count III, no judgment was entered on that verdict because "[t]he two offenses of Unlawful Possession of a Firearm in the First Degree (Count II) and Unlawful Possession of a Firearm in the Second Degree (Count III) . . . only constitute one conviction." Releford's sentence reflects the fact that the only offense upon which judgment was entered (and thus the only offense of which he was convicted) was unlawful possession of a firearm in the first degree, based on count II.

500

¶53 Because Releford was not convicted on count III, there is no conviction to vacate.

¶54 Affirmed.

Cox and ELLINGTON, JJ., concur.

Reconsideration denied March 4, 2009.

Review denied at 166 Wn.2d 1028 (2009).