# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                 Respondent,<br><br>       v.<br><br>COREY DAMON MONTGOMERY,<br><br>                Appellant. | DIVISION ONE<br><br>No. 86070-4-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Corey Montgomery appeals from the order of the superior court imposing a standard range sentence upon him after we vacated two of his convictions and remanded this matter for resentencing. On appeal once more, Montgomery asserts that the sentencing court erred by considering certain telephone calls that he made to M.C., the subject of a lifetime no-contact order entered against him, without first holding an evidentiary hearing. He also asserts that the sentencing court erred by denying his request for a sentencing alternative pursuant to the mental health sentencing act.[1] Additionally, Montgomery contends that the sentencing court erred by calculating his offender score to include a prior out-of-state conviction.

The sentencing court, however, recognized Montgomery's timely objection to the challenged evidence and appropriately addressed his concerns without the need for a separate evidentiary hearing. Moreover, while the record reflects that

---

[1] Codified at RCW 9.94A.695.

the sentencing court initially considered granting his request for a mental health sentencing alternative, the court did not abuse its discretion by ultimately denying his request in recognition of evidence that he had continued contact with M.C., who was the victim of his domestic violence convictions and who was protected by a lifetime no-contact order.  Finally, the sentencing court did not err when it included Montgomery's out-of-state conviction in calculating his offender score. Accordingly, we affirm.

I

We have previously set forth the facts in this matter in an unpublished opinion, State v. Montgomery, No. 83517-3, slip op. at 2-6 (Wash. Ct. App. Jan. 17, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/835173.pdf. The facts pertinent to the issues before us are set forth below.

In June 2021, Montgomery was charged by third amended information with eleven offenses arising from two domestic violence incidents involving his girlfriend, M.C.  The charges included two counts of assault in the second degree domestic violence, one count each of assault in the third degree domestic violence, felony assault in the fourth degree domestic violence, domestic violence felony violation of a court order, assault of a child in the third degree, arson in the first degree, tampering with a witness, and three counts of domestic violence misdemeanor violation of a court order.  He was found guilty as charged after a bench trial.

In the resulting sentencing proceedings, Montgomery requested the imposition of an alternative sentencing pursuant to the mental health sentencing

act. Montgomery, No. 83517-3, slip op. at 17. However, the sentencing court "found that this was not a compelling case to apply the mental health alternative." Montgomery, No. 83517-3, slip op. at 17. The court calculated Montgomery's offender score, including a prior Alabama conviction for robbery in the first degree, and sentenced him to a standard range term of incarceration.

Montgomery appealed his judgment and sentence to this court.[2] On review, we vacated two of the eleven convictions and remanded the matter to the trial court for resentencing consistent with our decision.

In September 2023, the superior court held a resentencing hearing with Montgomery appearing before the same judge who had both presided over his bench trial and previously sentenced him. Montgomery again requested a mental health sentencing alternative. The sentencing court then heard testimony from Montgomery and several friends and family members in support of granting his request for such a sentencing alternative. The court was also provided with a statement from M.C., the victim, indicating that she favored granting the sentencing alternative request.

With regard to this request, the court stated, "from this court's perspective, it's undeniable that there is some mental health issues going on, I don't know that this is what this type of treatment alternative -- that this is the type of behavior that the mental health treatment alternative was meant to address." The sentencing court weighed the evidence before it, including M.C.'s opinion

---

[2] In his prior appeal, Montgomery did not challenge the trial court's decision to deny the mental health sentencing alternative or its decision to include his Alabama conviction for the purpose of determining his offender score. Montgomery, No. 83517-3, slip op. at 1.

and the court's observations of Montgomery's behavior during trial and at

resentencing.

> I also have [M.C.], who has indicated that she's in support of this, and many family members.
>
> Again, I have concerns because the behaviors that, as I said before, that were implicated in this case, there's domestic violence, underlying domestic violence, manipulation and control issues that need to be addressed. But there is also some -- I can't, at this point, find that mental health is not at play here given the changes that I see in Mr. Montgomery now that he is appropriately medicated for his mental health issues.
>
> I still have concerns because he had this opportunity before to address mental health, and wasn't doing it, and that led us to these multiple charges. So I have concerns, but he -- let's just see. Let's just see.

The court then deferred on ruling on Montgomery's request, ordered the

State to prepare a presentencing investigation report pursuant to RCW

9.94A.695, and continued the sentencing proceeding until after the report was

prepared.

Prior to resumption of the resentencing hearing, the State prepared a

supplemental sentencing memorandum regarding Montgomery's request for a

mental health sentencing alternative. In that memorandum, the State argued that

Montgomery's request should be denied. This was so, according to the State,

because, despite the entry of a lifetime no-contact order between Montgomery

and M.C. and notwithstanding his prior convictions for violation of a no-contact

order protecting her, he had placed 302 telephone calls to M.C. while he was in

jail between July 2023 and the first resentencing hearing in September 2023.

In November 2023, the sentencing court convened another hearing on

Montgomery's resentencing. The State presented evidence in support of its

memorandum at the hearing, providing transcripts and playing audio recordings of seven of Montgomery's telephone calls to M.C. Montgomery objected to the telephone calls on the basis of lack of foundation, which the sentencing court overruled, noting that M.C. had identified herself in the calls provided. In addition, the trial court noted that it had presided over the trial and was aware of information regarding the parties that was consistent with details in the telephone conversations. As a result, the trial court determined that the "person in these calls is who it purports to be, which is [M.C.]."

The trial court heard and considered the telephone calls, heard statements from Montgomery, and denied the request for a sentencing alternative. Instead, the court imposed a low end standard range sentence of 108 months of confinement.[3] Montgomery appeals.

II

Montgomery asserts that the sentencing court deprived him of his right to due process by considering, over his objection, evidence of hundreds of telephone calls—calls that he made to the victim of his crimes of conviction,

---

[3] After initial sentencing in this matter, Montgomery pleaded guilty to one count of assault in the second degree domestic violence arising from an unrelated incident in Pierce County. The Pierce County Superior Court imposed a sentence of 51 months, to run consecutively to the King County sentence. At resentencing, Montgomery requested that the trial court in this matter impose its sentence to be served concurrently with the Pierce County sentence. Pursuant to RCW 9.94A.589(2)(a), "[w]henever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term of confinement shall not begin until expiration of all prior terms of confinement." Thus, a concurrent sentence would have been an exceptional sentence, had the court chosen to adopt the defense recommendation.

M.C., while he was in jail pending resentencing—without holding an evidentiary hearing. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). "A trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court." Demery, 144 Wn.2d at 758.

Chapter 9.94A RCW, the Sentencing Reform Act of 1981 (SRA), provides that a sentencing court "may rely on no more information than is . . . admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2). In criminal sentencing proceedings, the rules of evidence do not apply, and the trial court may consider a broad range of evidence. State v. Deskins, 180 Wn.2d 68, 83, 322 P.3d 780 (2014); ER 1101(c)(3). However, when a defendant disputes a material fact, the court must "either not consider the fact or grant an evidentiary hearing on the point." RCW 9.94A.530(2). The evidence admitted in a sentencing hearing must meet due process requirements. State v. Strauss, 119 Wn.2d 401, 418, 832 P.2d 78 (1992), abrogated on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "The due process clause requires that a defendant in a sentencing hearing be given an opportunity to refute the evidence presented and that the evidence is reliable." Strauss, 119 Wn.2d at 418-19.

Here, as set forth above, the State requested that the court consider transcripts and audio recordings of seven telephone calls, taken from the 302 telephone calls Montgomery placed to M.C. from jail while he was awaiting

6

resentencing. Montgomery objected to the court's consideration of the calls, arguing that the State had not established a proper foundation as to whether M.C. was the individual to whom Montgomery had made the calls in question.

The trial court overruled Montgomery's objection. The court first noted that, in the calls for which the State provided a transcript, M.C. had expressly identified herself. The trial court also noted that

> during the trial, I had information about [M.C.], and who their children are, and their ages, and her relationship with Mr. Montgomery. So I, for purposes of sentencing, will find that . . . for the calls that were provided to me, and the information that was provided in the calls to me as far as the conversations is sufficient to establish that the person in these calls is who it purports to be, which is [M.C.].

Thus, the trial court made findings that both addressed Montgomery's objections to its consideration of the telephone calls and resolved the issue of the reliability of the evidence. As Montgomery made no effort to refute the factual contents of the telephone calls, the trial court properly complied with the necessary due process requirements to allow consideration of new evidence during the sentencing proceeding. Montgomery had the opportunity to raise his concerns. The trial court addressed those concerns. There was no need for a separate hearing. The trial court did not abuse its discretion by admitting and considering the telephone calls as evidence in the resentencing proceeding.

III

Montgomery also contends that the sentencing court erred by denying his request for the imposition of a mental health sentencing alternative. The sentencing court erred in so doing, Montgomery contends, because the court did

not properly consider the opinion of M.C., the victim in this case, in which she recommended that the court grant his sentencing alternative request. Although Montgomery is correct that the sentencing court was required to consider the victim's opinion when determining whether to grant such a request, the record reflects that the court considered the victim's opinion and simply declined to follow it. The sentencing court did not err in so doing.

RCW 9.94A.695 sets forth an alternate sentencing framework for a defendant convicted of a felony who is diagnosed with a serious mental illness. Pursuant to that statute, such a defendant may be eligible for a mental health sentencing alternative if the judge determines the defendant and the community would benefit from supervision and treatment. RCW 9.94A.695(1). The decision to grant a sentencing alternative "is entirely at a trial court's discretion, so long as the court does not abuse its discretion by denying a [sentencing alternative] on an impermissible basis." State v. Sims, 171 Wn.2d 436, 445, 256 P.3d 285 (2011) (discussing the special sex offender sentencing alternative).

Notably, in determining whether such a sentencing alternative is appropriate, RCW 9.94A.695 mandates that "[t]he court shall consider the victim's opinion whether the defendant should receive a sentence under this section." RCW 9.94A.695(4). Unless contrary legislative intent is apparent, the legislature's use of the word "shall" in a statute imposes a mandatory requirement. State v. Gonzales, 198 Wn. App. 151, 155, 392 P.3d 1158 (2017). Thus, the trial court was statutorily required to consider M.C.'s opinion when

deciding whether to grant Montgomery's request for a mental health sentencing alternative.

Here, at the initial hearing on resentencing, M.C. expressed her thoughts concerning Montgomery's request for the sentencing alternative:

> I would like to add that I am in agreeance [sic] with who's representing Corey. I do feel like I would be more comfortable with him coming out, getting the mental resources and the support that he needs to come out and, you know, be a father, and be a son, and be, you know, a family member and a member in society. I feel like he needs that in order to move forward.
>
> I don't feel like prison time is what he needs. So I just wanted to say, I agree with that.

During the remainder of that initial hearing, the sentencing court acknowledged M.C.'s opinion twice. First, when discussing the sentencing scheme with Montgomery, the trial court noted that M.C. "is in support of you receiving mental health treatment." The trial court later reiterated, "I also have [M.C.], who has indicated that she's in support of this, and many family members," as a reason to continue the sentencing hearing to allow the State to prepare a treatment evaluation.

Two months later, when the sentencing hearing resumed, the State introduced the telephone calls from Montgomery to M.C. After listening to several of the telephone calls, and allowing Montgomery to respond, the sentencing court denied his request for mental health sentencing alternative, stating as follows:

> So, yes, we need to have your mental health issues addressed; I agree with you and your family on that. But the mental health sentencing alternative, as I stated previously, is not appropriate. Because I cannot find, as required by statute, that the community

9

> will benefit by you being on that. Because you said, "What's the worst thing that can happen if I put you on that?" You continue to violate the Court's orders. You continue to harass [M.C.]. You start living with her again. You assault her again. This time she's harmed. She's killed. The kids are killed. Or you have another mental health crisis and you burn the building down, and people that are not in any way related to you or have any connection with you are murdered and killed by you. That's the worst thing that can happen.
>
> And why is that a possibility? Because you can't obey the simplest of orders, which is do not contact her. Three hundred and two times. And just the snippet I heard where you're, again, manipulating her.

Thus, after hearing of Montgomery's persistent contact in violation of the no-contact order, the trial court denied the sentencing alternative, citing the safety of both M.C. and the public. While the record from the first day of the sentencing hearing demonstrates that the trial court heard and considered M.C.'s opinion, concerns as to Montgomery's compliance with court orders ultimately led the court to rule at variance with M.C.'s opinion.

In so doing, the trial court did not abuse its discretion. The statute in question requires a sentencing court to *consider* the victim's opinion. We do not question that public policy supports the legislature's determination that this consideration is necessary. However, public policy also supports the legislature's omission of any requirement that the judge *adopt* the victim's opinion. As this case illustrates, a requirement that a judge adopt the victim's recommendation could allow for continued victimization. M.C. was subject to hundreds of telephone calls, and several transcripts of calls provided to the court displayed Montgomery's attempts to cajole and manipulate M.C. into appearing at his sentencing hearing. Accordingly, while the trial court must consider the

10

victim's opinion, the ultimate determination of whether to grant such a sentencing alternative is properly assigned to the discretion of the judge.

The record reflects that the sentencing court herein considered M.C.'s opinion but simply did not adopt it. The sentencing court expressly indicated that it had heard and understood M.C.'s opinion regarding Montgomery's mental health. Indeed, after hearing this opinion, the court continued the resentencing hearing in order to allow for the preparation of a presentence investigation report as to the applicability of the mental health sentencing alternative in this case.

Moreover, the court's reasoning in denying Montgomery's request for a mental health sentencing alternative was tenable. A defendant is not eligible for the mental health sentencing alternative unless both the defendant and the community would benefit by the defendant receiving supervision and treatment. RCW 9.94A.695(1)(c). Here, the sentencing court denied the request for the mental health alternative after it considered Montgomery's conduct, which showed that he would not comply with court orders and could potentially endanger the public. Given the evidence before it, the sentencing court's decision to deny the sentencing alternative was not an abuse of discretion.

IV

Montgomery contends that the sentencing court erred in calculating his offender score by determining that his previous Alabama robbery conviction was

legally and factually comparable to a Washington offense. For several reasons, his claim fails.

We review de novo a challenge to the classification of an out-of-state or federal conviction. State v. Jackson, 129 Wn. App. 95, 106, 117 P.3d 1182 (2005).

Under the SRA, a defendant's offender score establishes the range within which he or she must be sentenced. RCW 9.94A.530. When the defendant's criminal history includes an out-of-state conviction that is "comparable" to a Washington felony, the out-of-state conviction counts toward the defendant's offender score as if it were the equivalent of the Washington offense. State v. Morley, 134 Wn.2d 588, 606, 952 P.2d 167 (1998); RCW 9.94A.525(3). The State bears the burden of establishing both the existence and comparability of out-of-state convictions by a preponderance of the evidence. State v. Ross, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004). A two-part test is utilized to determine whether an out-of-state conviction is for an offense comparable to a Washington felony offense. State v. Thiefault, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

> A court must first query whether the foreign offense is legally comparable—that is, whether the elements of the foreign offense are substantially similar to the elements of the Washington offense. If the elements of the foreign offense are broader than the Washington counterpart, the sentencing court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute.

Thiefault, 160 Wn.2d at 415. The sentencing court, in making its factual comparison, may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt. Thiefault, 160 Wn.2d at 415.

As an initial matter, a defendant's statements may relieve the State of its burden of proving the existence and comparability of prior out-of-state convictions. "[A] defendant's *affirmative acknowledgement* that his prior out-of-state and/or federal convictions are properly included in his offender score satisfies SRA requirements." Ross, 152 Wn.2d at 230. Although a defendant generally cannot waive a challenge to a miscalculated offender score based on legal error, waiver can be found where the alleged error involves an agreement to facts that are later disputed. Ross, 152 Wn.2d at 231 (citing In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002)). "The mere failure to object to a prosecutor's assertions of criminal history does not constitute such an acknowledgment." State v. Mendoza, 165 Wn.2d 913, 928, 205 P.3d 113 (2009). Rather, the defendant must affirmatively acknowledge the facts and information introduced for the purposes of sentencing. Mendoza, 165 Wn.2d at 928.

At the resentencing herein, the State's presentencing report included an analysis of the comparability of Montgomery's prior Alabama conviction to applicable Washington offenses. The State outlined Montgomery's prior convictions and provided calculations for this offender score as it varied for each count. The record provided to us on appeal does not include a presentencing

report prepared by Montgomery. However, the following exchange occurred between Montgomery's legal counsel and the sentencing court:

> THE COURT: . . . You're not contesting at this point any of the history as far as the standard ranges, the offender scores, the serious level, or the past robbery conviction at this point in time, is that correct?
>
> [DEFENSE COUNSEL]: Your Honor, I have read through the State's briefing, and I'm familiar with this case. I know the Court's prior ruling. So, based upon that information, I'm deferring to the Court on that; I'm not objecting.

Thus, Montgomery affirmatively acknowledged the proposed standard ranges, offender scores, as well as the comparability of the past Alabama conviction. After considering the arguments by the parties as to the mental health sentencing alternative, the court adopted the State's recitation of Montgomery's offender score and pronounced a standard range sentence of 108 months.

By affirmatively stating that he did not challenge the State's briefing or the sentencing court's prior ruling determining that his Alabama conviction was comparable, Montgomery agreed to its inclusion in his offender score. More than a mere failure to object, Montgomery's statements specifically approved of the trial court's previous assessment of comparability for the calculation of his offender score. He cannot now dispute that he agreed to the facts as found by the trial court during his initial sentencing proceedings. We therefore conclude that Montgomery has waived his right to challenge the court's inclusion of the Alabama offense in its calculation of his offender score.

Nevertheless, even if we consider his assertion, the sentencing court did not err in concluding that the State carried its burden of establishing the existence of and comparability of Montgomery's out-of-state convictions by a preponderance of the evidence.

The State does not contest whether the Alabama offense underlying his out-of-state conviction is legally comparable to a Washington offense. Therefore, we proceed to address Montgomery's challenge to whether those offenses are factually comparable.

For the factual step of the comparability analysis, "[o]ffenses are factually comparable when the defendant's conduct would have violated a Washington statute." In re Pers. Restraint of Canha, 189 Wn.2d 359, 367, 402 P.3d 266 (2017). "[T]o establish factual comparability, the State need independently prove only those facts that, when alleged by the State, have not been *admitted* by the defendant." State v. Releford, 148 Wn. App. 478, 488, 200 P.3d 729 (2009).

In Alabama, "'[a] voluntary guilty plea concludes the issue of guilt, dispenses with the need for judicial fact finding, is conclusive as to the defendant's guilt, and is an admission of all facts sufficiently charged in the indictment.'" G.E.G. v. State, 54 So. 3d 949, 954 (Ala. 2010) (internal quotation marks omitted) (quoting Scott v. State, 917 So. 2d 159, 166 (Ala. Crim. App. 2005)).

Notably, in discussing facts admitted to by a defendant, we have stated that,
> [t]here is no basis for us to conclude that, where a defendant enters a plea of guilty at a point in time and in a foreign jurisdiction where

> such a plea constitutes an admission of the facts alleged by the government in the charging document, such an admission cannot be later relied upon to prove factual comparability for purposes of a subsequent sentencing in Washington.

Releford, 148 Wn. App. at 488.

> A person commits the crime of robbery in Washington State

> when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190. A person is guilty of robbery in the first degree in this state when, "[i]n the commission of a robbery or of immediate flight therefrom, he or she: (i) Is armed with a deadly weapon; or (ii) Displays what appears to be a firearm or other deadly weapon; or (iii) Inflicts bodily injury." RCW 9A.56.200(1)(a). In short, robbery "'encompasses any "taking of . . . property [that is] attended with such *circumstances of terror*, or such threatening by *menace, word or gesture* as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person."'" State v. Witherspoon, 180 Wn.2d 875, 884, 329 P.3d 888 (2014) (internal quotation marks omitted) (alterations in original) (quoting State v. Shcherenkov, 146 Wn. App. 619, 624-25, 191 P.3d 99 (2008)). The possession of a deadly weapon or display of a firearm or other deadly weapon in the course of a robbery elevates the offense to robbery in the first degree. RCW 9A.56.200.

Here, Montgomery challenges only the sufficiency of the documentary evidence relied upon by the State to prove the factual comparability of his Alabama offense with a Washington offense.

At the resentencing hearing, the documentary evidence relied on by the State in support of factual comparability was the grand jury indictment accusing Montgomery of robbery in the first degree in Jefferson County, Alabama, his signed proposed plea agreement setting forth his plea of guilty to that offense, and a document entitled "Case Action Summary," signed by the judge, that stated that Montgomery pleaded guilty to robbery in the first degree as charged in the indictment.

The grand jury indictment accused, in pertinent part, that

COREY DAMON MONTGOMERY JR. . . . did, in the course of committing a theft of $685.93 of lawful United States currency and/or coinage, the property of CARLA MCCRARY, use force or threaten the imminent use of force against the person of CARLA MCCRARY, or another person present, with the intent to overcome her physical resistance or physical power of resistance or to compel acquiescence to the taking of or escaping with the property, while the said COREY DAMON MONTGOMERY or another person actually present was armed with a deadly weapon or dangerous instrument, to-wit: a pistol, in violation of Section 13A-8-41[4] of the

---

[4] Alabama's criminal statute governing robbery in the first degree, Ala. Code § 13A-8-41, reads as follows:
(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
    (1) Is armed with a deadly weapon or dangerous instrument; or
    (2) Causes serious physical injury to another.
(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.
(c) Robbery in the first degree is a Class A felony.

Alabama Criminal Code, against the peace and dignity of the State of Alabama.

Montgomery contends that the State's reliance on the guilty plea is misplaced as the documents do not include language regarding his specific conduct, nor does he describe or attest to his conduct. Further, he contends the State cannot rely on the "Case Action Summary," both because it does not bear his signature and because the document does not indicate that he admitted or stipulated to any specific facts.

However, the "Case Action Summary" explicitly states that Montgomery "pleads guilty to Robbery First Degree as charged in the indictment," and announces "[a]ll pleadings, findings, Orders, judgments and sentences entered herein are filed, and it is Ordered that they be recorded and made a part of the permanent record in this case." The document was signed by a judicial officer, who, in so signing, entered it into the record. We have no evidence that the legitimacy of the plea has been assailed in Alabama. Nor are we aware of any other reason why we should not rely on Montgomery's plea of guilt, as duly approved by the court.

Furthermore, Montgomery makes no argument that his conduct, as recited in the indictment, would not have violated the statute for robbery in the first degree in Washington. Thus, pursuant to both Alabama and Washington law, Montgomery's guilty plea amounts to an admission of the facts as described in the indictment, and the facts therein are proved for the purpose of the factual comparability analysis. The guilty plea to the facts included in the indictment conclusively establishes that Montgomery, while armed with a pistol, committed a

18

taking of $685.93 from Carla McCrary, employing either force or threat of imminent use of force to take said property.  This conduct proves factual comparability to Washington's offense of robbery in the first degree.  Thus, the trial court did not err by including Montgomery's prior out-of-state conviction in calculating his offender score.[5]

Montgomery has not prevailed as to any of his assertions on appeal. Accordingly, we hold that Montgomery has not established an entitlement to appellate relief.

Affirmed.

Dwyer, J.

WE CONCUR:

Chung, J.          Brennan, J.

---

[5] Montgomery acknowledges that even with exclusion of the Alabama conviction his offender score would remain above nine and, therefore, the applicable standard sentencing range would remain unchanged.